UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| DEVAL CORPORATION, | : | |
| | : | Case No. 16-17922 (AMC) |
| | : | |
| Debtor. | : | |
| | : | |

ORDER CONFIRMING DEBTOR'S THIRD
AMENDED CHAPTER 11 PLAN OF REORGANIZATION
PROPOSED BY DEVAL CORPORATION

AND NOW, this 23rd day of August 2017, the *Debtor's Third Amended Chapter 11 Plan of Reorganization dated August 4, 2017*, together with the Second Amended Asset Purchase Agreement dated August 4, 2017 by and between Parts Life, Inc., as buyer, and DeVal Corporation, as seller, attached thereto as Exhibit "A" [D.I. 194] (the "Plan") having been filed with the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") on August 4, 2017;

And the Debtor having filed its Report of Plan Voting on July 26, 2017 [D.I. 183] that states that an impaired class of claims voted in favor of the Plan;

And the Debtor's Second Amended Disclosure Statement Submitted Pursuant to 11 U.S.C. § 1125 and Debtor's Second Amended Chapter 11 Plan of Reorganization having been sent to all creditors and interest holders;

And the Bankruptcy Court having determined that the Debtor's Third Amended Chapter 11 Plan of Reorganization was not required to be sent to creditors and interest holders and/or solicited for vote;

1

And there being no objections to the Plan or any such objections being overruled, withdrawn or otherwise dealt with through an amendment to the Plan;

And the Plan having complied with all the requirements for confirmation set forth in 11 U.S.C. § 1129(b);

And the Plan being fair and equitable as to all classes of claims and interests and does not discriminate unfairly;

**The court hereby finds and concludes that:**

A.  Debtor DeVal Corporation filed the Plan with this Court, proposing to sell substantially all of its Assets to Parts Life Inc. or its assignee (the "Sale Transaction") pursuant to a certain August 4, 2017 Second Amended Asset Purchase Agreement (the "Agreement") entered into by DeVal Corporation and Parts Life Inc. ("Buyer").

B.  Any finding of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court at the Plan Confirmation Hearing. Any capitalized words in this Order which are not defined herein shall have the meanings given to them used in the Agreement.

C.  The Court has jurisdiction over this matter, over the property of the Debtor's estate (including the Assets) pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.  All required persons and entities were given actual written notice of the hearing on

confirmation of the Debtor's Plan, and were given a reasonable opportunity to object and to be heard with respect to the Plan.

E.  The Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate pursuant to Bankruptcy Code section 541(a).  The Debtor is not required to take any corporate or other entity action to authorize and approve the Agreement and the consummation of the Sale Transaction.  Upon entry of this Order, the Debtor shall have full authority to consummate the Agreement and transactions contemplated by the Agreement.

F.  The Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith, and at arms' length bargaining positions.  The Buyer is not an "insider" or an "affiliate" of the Debtor, as those terms are defined in section 101 of the Bankruptcy Code.

G.  The Sale Transaction proposed by the Agreement constitutes the highest or otherwise best offer for the Assets.  Entry of an order approving the Agreement and the Sale Transaction is a necessary condition precedent to the Buyer consummating the Sale Transaction.

H.  The transfer of the Assets to the Buyer will be a legal transfer of the Assets and will vest the Buyer with all right, title and interest of the Debtor to the Assets free and clear of all liens, claims, encumbrances and other interests of any kind, other than (i) Permitted Encumbrances and Assumed Liabilities and (ii) permits or licenses that are subject to review and approval by a Governmental Authority as provided in the Agreement; provided, that all liens, claims, encumbrances and interests of which the Assets are sold free and clear shall attach to the proceeds of the sale in order of their respective priorities.

I.     The Buyer would not have entered into the Agreement and would not consummate the Sale Transaction if the transfer of the Assets to the Buyer was not free and clear of all liens, claims, encumbrances and other interests of any kind and every kind whatsoever (other than Permitted Encumbrances and Assumed Liabilities), or if the Buyer would, or in the future could, be liable for any such liens, claims, encumbrances or other interests. A sale of the Assets other than one free and clear of such liens, claims, encumbrances and other interests would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate, with less certainty than the Sale Transaction.

J.     The transfer of the Assets to the Buyer, including the assumption by the Debtor and assignment to the Buyer of the Assumed Contracts, will not subject the Buyer to any liability (including any successor liability) with respect to the operation of the Debtor's business prior to the Closing Date, except that the Buyer shall be liable for the Assumed Liabilities. The Buyer (i) is not, and shall not be, considered a successor to the Debtor; (ii) has not, de facto or otherwise, merged with or into the Debtor; (iii) is not a continuation or substantial continuation of the Debtor or any enterprise of the Debtor; (iv) does not have a common identity of incorporators, directors or equity holders with the Debtor; and (v) is not holding itself out to the public as a continuation of the Debtor.

K.     The Agreement is a valid and binding contract between the Debtor and the Buyer, which is enforceable according to its terms. The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors.

L.     The assumption, assignment and/or transfer of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtor and

its estate and creditors.

M. Pursuant to Bankruptcy Code section 365, upon payment of the Cure Amounts, the Buyer shall have: (i) cured any monetary default existing prior to the Petition Date under any of the Assumed Contracts; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Petition Date under any of the Assumed Contracts.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT, in light of the foregoing findings, and for the reasons set forth on the record at the conclusion of the confirmation hearing:**

1. Debtor's Plan is hereby confirmed.

2. Any objections to confirmation of Debtor's Plan or the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are denied and overruled on the merits and with prejudice.

3. The Agreement and the Sale Transaction are APPROVED in all respects.

4. The Debtor is authorized to (i) execute, deliver and perform the terms of the Agreement and the Sale Transaction together with all additional documents that are requested by the Buyer which are reasonably necessary or desirable to implement the Agreement, (ii) take any and all actions as the Debtor deems necessary, appropriate or advisable for the purpose of assigning and transferring the Assets to the Buyer, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement, (iii) assume and assign the Proposed Assumed Contracts and Leases; and (iv) take all other and further acts or actions as may be reasonably necessary to implement the Sale Transaction.

5. The Sale is exempt from payment of all transfer fees and taxes.

6. Upon the Closing Date: (i) the transfer of the Assets to the Buyer pursuant to the Agreement shall constitute a legal, valid and effective transfer of the Assets and shall vest the Buyer with all right, title and interest of the Debtor in and to the Assets; and (ii) the Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and other interests of any and every kind whatsoever (including liens, claims, encumbrances and interests of any Governmental Authority), other than Permitted Encumbrances and Assumed Liabilities, and any such liens, claims, encumbrances and interests of which the Assets are sold free and clear shall attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force and effect they had against the Assets prior to the entry of this Order, subject to any rights, claims and defenses the Debtor and all interested parties may possess with respect thereto.

7. This Order is and shall be effective as a determination that all liens, claims, encumbrances and interests, other than Permitted Encumbrances and Assumed Liabilities, shall be and are, without further action by any person, released with respect to the Assets upon conclusion of the Closing. After the Closing Date, no holder of any liens, claims, encumbrances and interests, other than Permitted Encumbrances and Assumed Liabilities, or other party in interest, may interfere with the Buyer's use and enjoyment of the Assets based on or related to such lien, claim, encumbrance or other interest, and no party may take any action to prevent, interfere with, or impair consummation of the Sale Transaction. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Buyer in accordance with the terms of the Agreement and this Order.

8. The Buyer and its affiliates, successors and assigns shall not be deemed or

considered a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity. The Buyer has not assumed, nor is it in any way responsible for, any liability or obligation of the Debtor or the Debtor's estate, except with respect to the Assumed Liabilities. Without limitation, the Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind, including, without limitation, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other Governmental Authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Debtor or the Assets prior to the Closing Date, or arising based on actions of the Debtor taken after the Closing Date.

9. Except to the extent expressly included in the Assumed Liabilities or to enforce the Agreement, all persons and entities (including without limitation the Debtor, all creditors, all equity security holders, the Debtor's employees and former employees, and all Governmental Authorities) shall be forever barred and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances or other interests, whether by actions to obtain payment, by setoff, or otherwise, directly or indirectly, against the Assets, the Buyer, or any affiliate, successor, or assignee of Buyer.

10. To the extent that a counterparty to a Proposed Assumed Contract failed to timely

7

object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from objecting to or denying the validity and finality of the Cure Amount at any time; such Cure Amount, when paid, shall completely revive any Assumed Contract to which it relates. The Debtor is authorized to assume and assign any Proposed Assumed Contract with respect to which the contract counterparty did not file an objection by the applicable objection deadline.

11. Pursuant to Bankruptcy Code sections 105(a) and 365, all non-Debtor parties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or Buyer any assignment fee, default, breach or claim or pecuniary loss arising under or related to the Assumed Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing, other than with respect to the allowance and payment of any Cure Amount as provided in this Order and in the Agreement.

12. The consideration provided by the Buyer for the Assets under the Agreement is fair and reasonable and constitutes reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act.

13. All persons and entities that are in possession of any or all of the Assets shall surrender possession of such Assets to the Buyer as of the Closing Date.

14. This Order is binding on and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Assets free and clear of all liens, claims, encumbrances and interests, other than Permitted Encumbrances and Assumed Liabilities (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to discharge and remove all recorded mortgages, encumbrances, claims, liens and other interests against the Assets recorded prior to the date of this Order, other than Permitted Encumbrances. A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Assets recorded prior to the date of this Order, other than Permitted Encumbrances.

15. To the greatest extent permitted under applicable law and to the extent provided for under the Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Assets; to the extent provided for under the Agreement, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date, subject to any limitation imposed by applicable law. To the extent any license or permit necessary for the operation of the businesses at those locations assumed by the Debtor and assigned to the Buyer is not an assumable and assignable executory contract, the Buyer shall make reasonable efforts to apply for and obtain any such license or permit promptly after the Closing Date, and Debtor shall cooperate reasonably with the Buyer in those efforts. All existing licenses or permits applicable to the business shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures, to the extent

permitted by applicable law.

16. The Agreement and any related agreements, documents or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtor or the Debtor's estate.

17. The provisions of this Order authorizing the sale and assignment of the Assets free and clear of all liens, claims, encumbrances and interests (other than Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and notwithstanding the failure of the Debtor, the Buyer or any other party to obtain or file mortgage discharges, financing statement termination statements, assignments, or other instruments to effectuate the provisions hereof, all liens, claims, encumbrances and other interests on or against such Assets (other than Permitted Encumbrances), if any shall be deemed released, discharged and terminated in all respects. To the extent the Buyer deems it necessary or appropriate, if, upon consummation of the transactions set forth in the Agreement, any person or entity that has filed any statement or document evidencing liens, claims, encumbrances or other interests on or in all or any portion of the Assets (other than Permitted Encumbrances) shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all such liens, claims, encumbrances or other interests, the Buyer is hereby authorized (but not required) to execute and file such mortgage discharges, UCC termination statements, and/or other documents on behalf of such person or entity with respect to the Assets.

18.     In the event the Buyer cannot consummate the Sale Transaction within a reasonable period of time as determined by this Court, PDI/DeVal Acquisition LLC ("PDI") may replace the Buyer under the Agreement and proceed to consummate the Sale Transaction, provided, however, that with the consent of BB&T, that PDI may defer payment of the purchase price representing the payoff of the BB&T mortgage loan.

19.     The Buyer shall, forthwith, execute and deliver to its counsel, Subranni Zauber LLC, an assignment (the "Assignment") to PDI of its interest in and under the Agreement, which shall be held in escrow pending the earliest to occur of (a) closing of the Sale Transaction, (b) delivery instructions signed by the Debtor, the Buyer and PDI or (c) further order of this Court; the Assignment shall be made without representation or warranty, and without recourse against Buyer.

20.     The Debtor shall provide reasonable access to its property and facility as reasonably requested by PDI's environmental consultant in connection with PDI's effort to obtain an environmental survey of the Debtor's property, and shall provide information reasonably and customarily required by the consultant to complete its survey.

21.     A status hearing in this case is hereby scheduled for forty-one (41) days after the date of this Order or October 3rd, 2017 at 1:00 p.m. in Courtroom No. 5, United States Bankruptcy Court, 900 Market Street, Philadelphia, PA; however, the Debtor, Buyer or PDI may, for good cause request an earlier status hearing date by letter stating the reasons therefor, with copies to counsel for the other two parties.

22.     In the event the Sale Transaction has not closed at the time of the status hearing, and the debtor and Buyer desire additional time to close, the Court will consider evidence and

arguments presented by the parties as to the likelihood and expected timing of closing and the potential impact of further delay. The Court may, if circumstances warrant, order that the Assignment be delivered and/or fashion such other or further relief as may be appropriate to protect the interests of the Debtor's estate and its creditors.

23. In the event the Assignment is delivered and accepted by PDI, PDI and the Debtor shall work cooperatively, using reasonable business efforts, to consummate the Sale Transaction. The Debtor shall cooperate with PDI in connection with PDI's performance of government contracts pending the novation approval process, as PDI may reasonably request and at PDI's expense; notwithstanding the foregoing, Debtor's current management and principals shall not be required to provide any further assistance to PDI following a closing on the Sale Transaction.

24. If the Assignment is delivered to and accepted by PDI, then PDI (a) shall proceed to close on the purchase transaction, and (b) shall fulfill Buyer's purchase orders with the Debtor in accordance with their terms (in accordance with the delivery schedule reasonably anticipated by Buyer and the Debtor at the time of closing), including but not limited to granting Buyer a credit against the sale price of each order in the amount of any deposit payment previously made by Parts Life to the Debtor in partial payment of the price of such order.

25. Notwithstanding the foregoing, with the consent of BB&T, PDI may defer payment of the portion of the purchase price representing the payoff of the BB&T mortgage loan, in which case, PDI shall defend, indemnify and hold harmless the Debtor and its directors and officers, including, but not limited to Dominic Durinzi and Ronald Penska on account of their respective guaranties to BB&T, with respect to any and all claims arising from the BB&T mortgage loan pending PDI's full and final payment to BB&T on account of such indebtedness as

required under the Plan.

26. Upon acceptance of the Assignment, PDI shall have standing for up to sixty (60) days after the Effective Date to object to any claims, and may withhold and escrow the funds from the cash purchase price under the Agreement, the amount of any claim as to which PDI certifies in good faith its intention to object. Notwithstanding the foregoing, PDI will not object to the Class 6 Claims of Dominic Durinzi and/or Ronald Penska, provided that they do not interfere with the transition of operations from the Debtor to PDI.

27. This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to the Plan, this Order, the Agreement and any related agreements, including, without limitation: (i) any actual or alleged breach or violation of this Order, the Agreement or any related agreements; and (ii) the enforcement of any relief granted in this Order.

BY THE COURT:

_____
Honorable Ashely M. Chan,
United States Bankruptcy Judge

Copy to:

Counsel for Debtor:

**Robert M. Greenbaum, Esquire**
SMITH KANE HOLMAN, LLC
112 Moores Road, Suite 300
Malvern, PA 19355
(610) 407-7216 Phone
(610) 407-7218 Fax

Attorneys for Debtor