UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| Deval Corporation, | : : : | Case No. 16-17922 (AMC) |
| Debtor. | : : | |

**Parts Life Inc. Brief
in Opposition to Motion of PDI Inc. for Award of Attorneys Fees and Costs**

**Introduction**

Parts Life Inc. submits this Brief in opposition to the motion of PDI Inc. ("PDI") for an award of attorneys' fees and costs pursuant to Bankruptcy Code section 503(b). The motion must be denied, because PDI is unable to overcome the presumption that it was at all times acting in its own self-interest. PDI therefore cannot carry its burden of proving entitlement to payment under Code section 503(b).

**Background**

This case was assigned to this court when it was first filed, and this court has conducted all of the hearings in this case. The court is therefore generally familiar with the facts underlying PDI's motion, and a factual record will be created at the hearing on this motion. In short, about seven years ago PDI began its effort to acquire the debtor or its assets. PDI managed the company for a period of time in anticipation of the acquisition, but after funding the company with several hundred thousand dollars it abandoned the effort, leaving management to deal with unpaid trust fund taxes for which they were personally liable, and very significant unpaid vendor

1

debt. PDI's subsequent efforts to collect the amounts it advanced resulted in the filing of this bankruptcy case, in which PDI resumed its efforts to acquire the company.

As discussed below, PDI bears the burden of proof on this motion, and must therefore present factual evidence at a contested hearing that is sufficient to support its claim. PDI will be unable to do so, because all of its actions were designed primarily to have PDI's debt paid in full or for PDI to acquire the debtor company.

## **Legal Argument**

PDI's motion is governed by the opinion of the Third Circuit Court of Appeals in <u>Lebron v. Mechem Financial, Inc.</u>, 27 F.3d 937 (3d Cir. 1994). In that case the court held that to be entitled to compensation under Code sections 503(b)(3)(D) and (b)(4), the moving party must prove that it engaged in activities in the bankruptcy case that were <u>not</u> <u>designed</u> <u>primarily</u> to benefit that party, which it would <u>not</u> have undertaken absent an expectation of reimbursement, which resulted in a substantial benefit to the estate.

In its articulation of this three pronged test the court imposed the burden of proof on the moving party, holding that such parties must overcome the <u>presumption</u> that they acted in their own self interests. <u>Id</u>. at 944. This presumption makes it "especially difficult for creditors to pass the substantial contribution test." <u>In re Sound Radio, Inc.</u>, 145 B.R. 193 (Bankr. D.N.J 1993). The Third Circuit reaffirmed its allocation of the burden of proof in <u>In re Tropicana Entertainment LLC</u>, 498 Fed.Appx. 150, 152 (3d Cir. 2012) ("Importantly, the party seeking reimbursement bears the burden of proving to the Bankruptcy Court that it is so entitled.") (internal citation omitted).

The <u>Lebron</u> court observed a critical distinction between a benefit <u>intended</u> by a party and one that is <u>incidental</u> to activities the party engaged in to advance its own interests.

2

> Inherent in the term substantial is the concept that the benefit received by the estate must be more than an **incidental** one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are **presumed** to be acting in their own interests until they satisfy the court that their efforts have transcended self protection.

Lebron, 27 F.3d at 944 (emphasis added). The court emphasized this point later in the opinion:

> As we have indicated, however, a determination that a benefit was conferred does not end the inquiry as to whether there was a "substantial contribution" within the meaning of § 503(b)(3)(D). A creditor should be **presumed** to be acting in his or her own interest unless the court is able to find that his or her actions were **designed** to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the chapter 11 estate

Id. at 946 (emphasis added). In short, as a creditor PDI is presumed to have acted in its own self interest, and it is entitled to compensation only if it can carry its burden of proving that its actions were designed <u>primarily</u> to benefit other parties.

PDI sought to acquire the debtor company or its assets from the outset of this case, and it never veered from that course of action, which this court has acknowledged was almost successful. Indeed, PDI first expressed interest in acquiring the debtor about seven years ago, and its claim in this case was based upon amounts it advanced in connection with its efforts to acquire the company. In recognition of this factual record and its burden of proof, PDI admits that this issue requires "significant analysis." PDI motion at page 8.

Courts do not look favorably upon parties such as PDI who seek "substantial contribution" awards after an unsuccessful attempt to acquire a debtor's business.

> By contrast, where creditor self-interest appears to dominate a creditor's actions courts have not allowed substantial contribution claims. **In particular where it appears that the goal of the creditor has been acquisition of the debtor entity or its assets, courts have uniformly rejected administration expense claims for substantial contribution under Code §503(b)(3)(D) and (4).** In the case of *In re Public Service Co. of New Hampshire*, 160 B.R. 404 (Bankr.D.N.H.1993), the United Illuminating Company ("United") sought

> reimbursement for its participation in an auction bidding process undertaken pursuant to debtor's plan of reorganization. Although United was an unsuccessful bidder, it claimed that its participation resulted in bidding up the price for the debtor's assets and **produced a $300,000,000 net gain for the estate.** *Id*. at 451. In denying United's motion, the court referred to "the law of economic self interest," pursuant to which, "[c]reditors normally act in their economic self-interest and any incidental benefit to the estate is an indirect by-product of their pursuit of their own self interest." *Id*. at 452. **The court noted that from the outset United's goal was to acquire the debtor and profit thereby. Id. at 453. The court found this goal incompatible with an intent to primarily benefit the estate. Id.**
>
> Similarly, in a case whose facts closely resemble the matter sub judice, *In re American 3001 Telecommunications, Inc.*, 79 B.R. 271 (Bankr.N.D.Tex.1987), a creditor who purchased a claim and filed an unsuccessful competing plan of reorganization which sought to put the creditor in control of the reorganized debtor[1], was denied an administrative expense under §§ 503(b)(3)(D) & (4). The 3001 court viewed the creditor's efforts as analogous to the efforts of an unsuccessful corporate raider, and held that, "legal services provided solely for the benefit of a creditor or client are not compensable from the bankruptcy estate." *Id*. at 273 (citations omitted).

In re Geriatrics Nursing Home Inc., 195 B.R. 34, 39-40 (Bankr. D.N.J. 1996)(emphasis added).

The Geriatrics court applied those holdings to the case before it and denied compensation.

> Viewed in its entirety, the record before the court indicates that Health Resources made a business decision to attempt to takeover the Debtors via the filing of a competing plan of reorganization. These facts do not overcome the presumption of self-interest enunciated in Lebron., 27 F.3d at 944 ("creditors are presumed to be acting in their own self interests until they satisfy the court that their efforts have transcended self-protection."). Therefore, their motion must be denied.

Id. at 40. PDI is in the same position as the potential buyers in Geriatrics and in the cases discussed by the Geriatrics court; this court should therefore deny the motion as other courts have done uniformly.

Moreover, in this context the Third Circuit Court of Appeals counsels this court to minimize administrative expenses.

---

[1] Here, as in Geriatrics, the efforts of the competing creditor (PDI) delayed confirmation of the debtor's plan and resulted in increased administrative expenses. See Geriatrics at p. 36.

> Subsection 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging "meaningful creditor participation in the reorganization process," Richton, 15 B.R. at 855–56 (citation omitted), and "**keeping fees and administrative expenses at a minimum** so as to preserve as much of the estate as possible for the creditors." Otte v. U.S., 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974) (citation omitted).

Lebron, 27 F.3d at 944 (emphasis added). The Lebron holding thus requires parties seeking this type of compensation to bear the burden of proof and overcome an adverse presumption, and requires bankruptcy courts to keep awards at a minimum. The court's statement that subsection 503(b)(3)(D) is designed in part to encourage meaningful creditor participation in the reorganization process simply has no application to this case. PDI's execution on its money judgment was the reason the debtor filed this bankruptcy case, and PDI clearly needed no encouragement to become the most active creditor in the case, as evidenced by its active engagement with the debtor from the very outset of the case.

PDI's argument that it sought relief that would benefit all parties rather than seeking relief from the stay or opposing use of cash collateral to benefit only itself is easily disposed of. PDI made clear that it wanted to acquire the debtor's operating business, not just its assets. PDI elected to negotiate a cash collateral order with the debtor rather than oppose its use of cash collateral for the same reason. PDI's effort were designed primarily to achieve its own goal of acquiring the operating company. PDI intended to benefit PDI. Any benefit to any other party was merely incidental to PDI's primary benefit. The Third Circuit Court of Appeals made clear in the Lebron case that a party is entitled to reimbursement of legal fees in this context only if the primary initial purpose of the services resulting in the substantial contribution was to benefit other parties.

> Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of §

5

> 503(b)(3)(D), "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are **designed primarily** to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

Lebron, 27 F.3d at 944.  PDI sought appointment of a trustee for the simple reason that it had a falling out with the debtor and it wanted a third party to operate the business until PDI acquired it.  In the same vein, PDI negotiated a cash collateral order with the debtor because it wanted the debtor to continue operating its business until PDI acquired it.  PDI always intended to acquire the debtor company, and all of the legal services for which it now seeks compensation were **primarily designed** to further that goal.  There is no evidence that PDI expected reimbursement for its efforts; indeed, it funded the costs of the appointed CRO with an explicit agreement that there would be no reimbursement of those costs.  PDI's decision to pursue reimbursement occurred late in the game, and although PDI's counsel eventually announced in court PDI's intention to seek compensation for PDI's substantial contribution to the case, PDI now seeks an amount that is more than triple the amount that was announced in court.

The critical distinction between services designed primarily to benefit all parties and other legal services is well illustrated by the court's opinion in In re Washington Lane Associates, 79 B.R.241 (Bankr.E.D.Pa.1987).

> In *In re Washington Lane Associates*, 79 B.R.241 (Bankr.E.D.Pa.1987), Judge Fox allowed a creditor utility company reimbursement from the bankruptcy estate for **attorneys' fees incurred in connection with the installation of gas meters in the debtor's apartment buildings**. The fees were reimbursed because the services rendered aided the debtor's reorganization efforts through the sale of apartments.  Furthermore, the installation was a cooperative effort with the trustee and the equity security holders' committee. *Id. at 244*.  The *Washington* court, however, disallowed the application for attorneys' fees where the fees were incurred for the benefit of the creditor. The specific attorneys' fees incurred for the benefit of the creditor involved the protection of the creditor's security

6

>   deposit, the review of the debtor's plan and trustee's motion to sell real
>   property, and the participation at the confirmation hearing. *Id.*

In re Sound Radio, Inc., 145 B.R. 193, 214 (Bankr. D.N.J. 1992)(emphasis added). The Washington Lane case presented a classic fact pattern case to award fees for services that were <u>primarily</u> <u>designed to</u> and did in fact result in a substantial contribution to the case for the benefit of all parties. PDI's intentions and activities in the instant case bear no resemblance whatsoever to the intentions and activities of the gas company in Washington (except for the activities designed to serve only the interests of the gas company for which compensation was denied).

The Sound Radio court concluded its analysis and conclusions with the following fundamental observation regarding allocation of responsibility for payment of attorneys' fees:

>   The American rule concerning fee shifting is premised on the requirement
>   that litigants bear their own costs and expenses including legal fees.
>   *Boeing Company v. Van Gemert*, 444 U.S. 472, 475, 100 S.Ct. 745, 747,
>   62 L.Ed.2d 676 (1980). The judiciary is directed to leave the process of
>   such fee shifting to the specific dictates of the legislature. *Chambers v.
>   Nasco*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
>
>   Nothing presented to this court suggests a modification of that rule.

Sound Radio, 145 B.R. at 215. That conclusion applies in this case as well, and the overall result of this case to PDI is more than fair. PDI was paid in full on its claim with interest at 18% per annum! The total payment to PDI was $1,144,114.65, an amount that is nearly double the amount that PDI advanced. Nonetheless, Parts Life Inc. does not seek relief under the maxim that pigs get fat and hogs get slaughtered; it asks only that the court deny the motion as required by the applicable case law.

Parts Life Inc. reserves all rights at the hearing on this motion, including but not limited to the right (a) to contest that any of the particular expenses or fees PDI seeks are entitled to administrative claim priority under Code section 503 because they do not relate to a substantial

contribution designed primarily to benefit other parties in the case, and (b) to contest that any of the particular fees sought relate to any administrative claim for expenses that may be allowed by this court under Coder section 503(b)(3)(D).

## Conclusion

Parts Life Inc. respectfully asserts that PDI's motion must be denied for all of the foregoing reasons.

                                                Subranni Zauber LLC
                                                Attorney for Parts Life Inc.

                                                /s/ John P. Leon

January 23, 2018                               By: John P. Leon
                                                Willow Ridge Executive Office Park
                                                750 Route 73 South - Suite 307B
                                                Marlton, New Jersey 08053
                                                Phone: 856-985-3086
                                                Fax: 609-345-4545