**United States Bankruptcy Court for the Eastern District of Pennsylvania**

_____
                                                          :
In re:                                                    :         CHAPTER 11
                                                          :
Deval Corporation,                                        :
                                                          :         Case No. 16-17922 (AMC)
                                                          :
                           Debtor.                        :
_____:

**Parts Life Inc. Supplemental Brief
in Opposition to Motion of PDI Inc. for Award of Attorneys Fees and Costs**

Parts Life Inc. files this supplemental brief after having taken the deposition of the moving party's principal, Irwin Haber, to inform the court that PDI has admitted that it cannot prove the elements necessary establish a *prima facie* case on this motion. In its original filing Parts Life quoted the following language from the Third Circuit's opinion in Lebron v. Mechem Financial, Inc., 27 F.3d 937 (3d Cir. 1994).

> Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are **designed primarily** to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

Id. at 944 (emphasis added).

Irwin Haber admitted in his deposition that PDI's actions in this case were designed primarily to obtain payment of the Debtor's debt to PDI by a sale of the company to PDI or a third party. See the attached **Exhibit A** – Deposition Excerpt No. 1. This testimony is confirmed by the Stipulations of PDI and Parts Life Inc. filed with the court today. Stipulation 23 states:

> Irwin Haber testified that PDI's primary purpose in the bankruptcy case from the very first day was to have the Debtor company sold through the bankruptcy process. Irwin

1

Haber also testified that PDI's primary purpose in seeking to have the company sold was to acquire the company itself, or have its claim paid in full from a sale to a third party.

When Mr. Haber was asked whether PDI anything did in the bankruptcy case with the primary purpose of benefiting creditors other than PDI, he responded that PDI did not object to the Debtor's use of cash collateral. See **Exhibit A** – Deposition Excerpt No. 2. That is irrelevant, because PDI seeks no reimbursement in connection with any services related to cash collateral. See **Exhibit A** – Deposition Excerpt No. 3. Mr. Haber further responded that PDI increased its offers to the general unsecured creditors in the case; all parties acknowledge that PDI increased its offers, but Mr. Haber admitted that PDI did that because it felt compelled to do so in light of the increased offers by Parts Life. See **Exhibit A** – Deposition Excerpt No. 2. PDI thus increased its offers to accomplish its primary purpose of acquiring the company.

## Summary and Conclusion

In summary, PDI admits that none of the legal services for which compensation is sought were rendered with the primary purpose of benefitting creditors other than PDI. The payment in full of general unsecured creditor claims that resulted from the bidding war in this case is exactly the kind of incidental benefit that the Lebron court found insufficient to grant an award of fees for a substantial contribution to the estate. As a result, PDI's motion must be denied, and there appears to be no reason to conduct a hearing with testimony on this motion.

July 27, 2018

Subranni Zauber LLC
Attorneys for Parts Life Inc.
  /s/  John P. Leon
By:   John P. Leon
Willow Ridge Executive Office Park
750 Route 73 South - Suite 307B
Marlton, New Jersey 08053
Phone: 856-985-3086
Fax: 609-345-4545

2

## Deposition Excerpt No. 1

Q. So is it fair to say from the first day of the bankruptcy case through the very end, because this email is dated less than one month before the conclusion of the confirmation hearing, is it fair to say that PDI's primary purpose in the bankruptcy case from the first day of the case through the Court's ruling on confirmation was to acquire the company?
**A. The primary purpose was to effect the -- to get the debtor to effect the sale of the business. We would certainly have liked that to have been an outcome for us.**


Q. I think we've established by prior testimony that the primary purpose of the sale was, one, a PDI acquisition or, two, payment of PDI's claim in full from a sale to a third party; is that correct?
**A. Certainly, that is one of the outcomes. I think you left off a third one.**


Q. Not the outcome, the purpose, we're talking about.
**A. Yes.**


Q. This was the primary purpose from the first day through the last day?
**A. Yes.**

**Deposition Transcript at page 103, lines 1-25.**

# Exhibit A

3

### Deposition Excerpt No. 2

Q. So we've established that when you obtained your judgment and executed on your judgment, your primary purpose was to recover the PDI debt. Was there ever a time during the bankruptcy case that your focus shifted and your primary purpose was to benefit other creditors rather than PDI?
**A. There was -- as the case evolved, as the case evolved, we knew that the decisions that we were making would benefit the unsecureds and quite frankly, all of the creditors.**

Q. Understood. I'm trying to understand what was PDI's primary purpose in taking actions and my question is, was there anything that PDI did in the bankruptcy case with the primary purpose of benefiting other creditors rather than PDI?
**A. Yes.**

Q. And what were those actions?
**A. We did not object to the use of cash collateral and we --**

Q. I'm sorry to interrupt you. That was for the benefit of PDI as well. Right?
**A. Yes.**

Q. And is it your testimony that your failure to object to use of cash collateral was intended primarily to benefit other creditors rather than PDI?
**A. It was -- PDI benefited from that, as a byproduct of that, but all of the creditors benefited from that and the other things that we did as the case evolved was we continued to evaluate the company's position and we actually several times increased our offer to the unsecureds.**

Q. Well, isn't it true that you only increased your offer in response to increases by Parts Life?
**A. We -- that was certainly one of the reasons. We saw that there was a competitive bid that was there and as I recall, we were – I believe Mr. Matour early in the case was insisting that the company try and find a buyer, whoever that buyer might be and, you know, something that would benefit everybody, so as it turned out, Parts Life showed up and so we felt compelled to sweeten the offer to the benefit of the unsecureds, so yes.**

Q. So you said that the Parts Life increased offers were one reason that you increased the PDI offers. What were the other reasons?
**A. We felt the value of the business had increased over the time period and we felt in our analysis that it would justify a higher premium, a higher payment to the -- in this case, to the trade.**

**Deposition Transcript at page 84, lines 5-25; page 85; page 86, lines 1-9.**

# Exhibit A

## Deposition Excerpt No. 3

> **MR. MATOUR:** Can I just make an observation in the interest of time?
>
> **MR. LEON:** Sure.
>
> **MR. MATOUR:** Our request for 503B relief does not include any time spent with respect to cash collateral.
>
> **Deposition Transcript at page 87, lines 9-14.**

# Exhibit A